Marilyn Bednarski, Counsel for Appellant Patricia Green My first question goes to jurisdiction. The justification for an interlocutory appeal, ordinarily you can't appeal a grand jury subpoena. The justification is when there's a third person who could not be expected to resist and the target is entitled to preserve the confidentiality of communications such as to a lawyer. Have I got that right so far? Right. Now, it seems to me that the lawyer certainly would have an ethical responsibility not to disclose client confidences, but only up to the point where a judge orders him to disclose them. Once the judge denies the subpoena, the lawyer is not going to be subject to professional discipline for complying with the court's order. So I don't really understand why we should apply, what was that case, Friedman or something? Perlman? Yes, Perlman. I don't understand why we should apply it here and allow an interlocutory appeal. It seems like once the judge, once the lawyer has the protection of a court order, there's no reason why he wouldn't testify to the grand jury. And therefore, the target doesn't need the interlocutory appeal in order to preserve the issue. He can appeal later when it's all over and say you never should have gotten that. Our position is that once the lawyer reveals the privileged material or the material that we would contend is privileged and that cat is out of the bag, it can't be put back in. So what we seek to do is to have review of the point. Right. But that assumes that the lawyer won't obey and invoke the attorney-client privilege. Isn't that the concern? I think that what Perlman did 80 years ago is understand that the lawyers' and clients' interests shouldn't be pitted against each other. There are many examples in cases where the lawyers' interests shouldn't be pitted against each other. And the question that's presented in this case is whether or not the lawyer in this case was Mr. Allen. Right. Whose corporate counsel for the Green's company is sufficiently related both to the subject matter of the grand jury proceeding and is sufficiently connected to Mr. Green that he is likely to invoke the attorney-client privilege and be willing to go through the refusal-to-answer process, in which case we would have a specific question and a specific answer to review to decide whether or not it was truly subject to the attorney-client privilege. Why isn't Mr. Allen, like Mr. Balin, who was the accountant, hired for the proceeding? It seems to me Allen's very much a part of this. I disagree with that because I see Balin as having a direct agency relationship, much like the employee in Niren. You know, someone who is the in-house counsel is essentially an employee. I see Mr. Balin, who was the accountant both before and the accountant then retained by criminal counsel to assist in preparation, became part of the defense team as someone who then had a present agency relationship to the grand jury matter. I see Mr. Allen in this case as very, very different. He has neither a former lawyer within that test, nor is he a present lawyer. And I disagree with that. He's a lawyer for the businesses, but not the Greens, isn't he? That's right. And he's a party to the agreement. Well, there was an oral joint defense agreement at that meeting. The meeting that occurred on July 12th. To which he was a party. He was a party to both the oral joint defense agreement and then later there was a written joint defense agreement. Right. But he was not counsel to either of the Greens. They had their individual criminal counsel. No, but there's a joint defense privilege because there's a corporate relationship. It is their corporation. There's a corporate shell there. But this isn't some extraneous third party who's being brought into an unrelated proceeding. He's, in fact, so involved that he's party to the joint defense agreement and the confidentiality relationship that goes with that. Well, 92-1, grand jury 92-1 case is an example where corporate counsel is subpoenaed for corporate records. And that related to records of whether or not export control licenses were properly obtained or not. There was jurisdiction there and it was Perlman jurisdiction. And he was present corporate counsel directly related to the grand jury matter that was under investigation. What we're saying is that the relationship to Allen, while there is, he is there as business counsel. The corporation is a separate entity with separate interests. He never represented the Greens in connection with this grand jury investigation. I'm sorry, what was the case you cited? It's called In Re Grand Jury Perens SJ. I think it's 31 Fed Third. And I can give you the whole site. They're all entitled. They're very hard to keep separated. The only way you can is to name in the parenthesis. I've got it here, 31 Fed Third. Thank you, Mr. Cochran. 826. Thank you. It's a ninth circuit case from 1994. At that, from the very beginning, I represented Patricia Green. Jerome Mooney represented Gerald Green. They had individual criminal counsel. I think the test enunciated in Balin is whether the attorney actively represents the target in connection with the grand jury investigation. And the Balin court cites Alexiou, which held that the attorney there did not have to be held in contempt for there to be jurisdiction. And Balin cites Alexiou for the proposition that even a current lawyer for the target, but on an unrelated matter, still does not have to risk a contempt citation. It's our position that- That's the guy who got paid the counterfeit dollars, and it was an unrelated matter, wasn't it? It was an inquiry into who provided the $100 counterfeit bill. And the representation that the $100 was paid for was passed. Passed, right. That was over with. In Niren, which is a clear example of that agency relationship and a type of lawyer who the client can direct what to do. Niren was the counsel for the commune in Oregon, and he was the current in-house counsel. We don't have that situation here. If we go back to Perlman and we look at what was the relationship involved there, Perlman was not a lawyer, but was the owner of the company, and he wanted to protect his exhibits from being disclosed to the criminal grand jury. So when the subpoena came, or it wasn't really a subpoena, but it was an order to the clerk of the court to produce those exhibits to the grand jury, the owner, Perlman, fought the order. His lawyers, who were corporate counsel, who had originally then served with the motion to produce the orders, that the clerk produce the orders, neither appeared nor defended against the motion. So there are these instances where the client's interests, even though there's ethical obligations and obviously relationships and biases that could influence conduct, did not require a lawyer to have taken a contentious citation or another party for there to be jurisdiction. I think it's your colleague's time now. I have so many things I'd like to talk to you about. Always happens. But you're right. If you don't get past this one, you don't need to talk to us about the others. That's right. Good morning. May it please the Court. With respect to the record on jurisdiction. Could you announce yourself for the Court? Yes, sir. I apologize. My name is Steve Cochran. I'm here on behalf of the attorney, a subpoena recipient, Mr. Allen. Your Honor, it fairly characterizes the test. And the cases say that it becomes more difficult to ply the permanent exception, depending upon the extent to which the target of the investigation has some control over the lawyer. Some of the lines this Court has drawn have become a little bit hazy in this regard. The bottom line, though, is that we believe this case is closer to the grand jury subpoena, the SJ92 case. I've never understood Perlman, frankly. I don't understand why a lawyer would go to jail once he's been ordered by a court to make a disclosure so that he no longer risks any unethical conduct. I understand, Your Honor. I think it's how long the movement or the target has to litigate the initial decision made by the district court, which in the court's eyes provides protection to the lawyer to give up what is privileged information because the district court has said it's not privileged. Okay? And then litigate in the district court and then in the court of appeals if there's a conviction, whether it was privileged or not. It has become a little hazy. On the one hand, you have Niren. We're on a motion to dismiss the appeal. This Court finds that we're not going to apply Perlman where the attorney is employed by the target of the movement. While you've still got a little time, could you address the crime-fraud exception? Let me address that briefly. The big problem in this case, as we see it, is that there were prior applications before and after indictment and triggering of constitutional rights where it appears there was privileged information revealed without notice to individuals who by this time have their constitutional rights triggered in. The other problem with the case, sir, is that this appears to be an initial meeting among lawyers. If a client. Yes, sir. If there's evidence that's been put before court, hypothetically, that a client has, in a meeting with a lawyer, disclosed a plan to cause false testimony to be put on at trial, I'm giving you a hypothetical case. Does the crime-fraud exception apply so that the lawyer, the privilege does not apply and the lawyer may be subpoenaed to testify about what the client said to him? I think the law is pretty clear, is that the crime-fraud privilege would apply. What I'm concerned about. Now, why wouldn't that hypothetical case lead to the same conclusion in this case? Well, first of all, we don't know what the district court's been shown, okay? Assuming what the court has said, that is the law. What I've got here, though, is a situation where a couple of days after a search has occurred and a bunch of people have learned that there's a government investigation going. Lawyers are hired and everybody meets who might be targeted, might not, to meet the clients, learn their business, give them advice about how to conform their conduct to the law. Soon thereafter, one of the participants to the joint defense agreement decides to cooperate with the government and provides information which the government then uses to decide whether at this initial meeting the defendants and the lawyers are engaged in core defense function, how to organize a defense and deal with the government investigation, or decides whether it's not good faith collaboration and conferring with counsel, but something in furtherance of a crime in which the government gets to intrude, goes to the district court to intrude. A very important intrusion on what is generally legitimate defense function. When was the joint defense meeting that you're talking about? This is July 20th of 2007. When did the prior event that you? The search occurs, I believe, on July 12th of 2007. So that's over a week. Yes, sir. The government goes to the district court in November of 2007. The defendants are arrested and Mr. and Mrs. Green are arrested in December, charged in January. The government goes again in February to the district court without notice, to the lawyers, the clients, the charged defendants, anyone, to seek piercing of the privilege. And what I'm very concerned about is that there ought to be adequate procedures, namely notice and an opportunity to be heard. I think one of the disadvantages that the defense always has in this case is that it's an ex-party, in-camera examination by the judge of what the government has. Isn't that the way it works? Yes, but I think there are twists in this case. This is not the usual situation where nobody knows a grand jury proceeding is going on except those who have been subpoenaed. Secrecy interests are paramount, and that's often the context in which there's an application to pierce the privilege or apply the exception. Often, but not always. No, sir, not always. Here we have a situation where we have an obstruction of justice investigation, ancillary to the bribery charges, but which everybody has noticed when the complaint is filed. And in the face of that, and in the face of right to counsel and due process having triggered, because the defendants have been charged, we have the government going in, ex-parte and under seal, to seek to pierce the privilege, joint communications made, and an admission of meeting. And I just urge the court to consider whether notice and opportunity should occur. So what are you asking us to hold and do? Well, I'm asking to evaluate, re-evaluate something we have never seen regarding whether there's adequate proof of the crime-fraud exception. If not, the order should be reversed. And I'm asking the court to carefully consider whether the procedures in this unusual matter were adequate in light of the triggering of the Green's constitutional rights and the nature of this meeting to avoid a situation where the crime-fraud exception is being used to interfere with core defense functions for people who have been charged and are meeting with their counsel. Thank you, counsel. Thank you, sir. Good afternoon. May it please the Court. Assistant United States Attorney Bruce Searby for the United States. I'd like to start this by talking about the in-camera procedures, although there are the other issues of the merits. I have a question about Perlman. Yes. As you know, I don't really understand Perlman. Perlman says there's no jurisdiction unless the lawyer takes a contempt because or unless the lawyer is powerless or unless the target is powerless to control the lawyer. It seems to me that once there's a court order, the target is always going to be powerless to control the lawyer. There's only so much you do for your clients, and you don't act outside the law. And once the judge says this is the law, you have no risk in terms of getting disbarred for disclosing your client's confidences. Your duty is to follow the law. Why wouldn't you just blow your client off when he says, I demand that you not obey the judge's order? Well, Your Honor, I think it's a very interesting question, one that I have not given a lot of attention to in preparation. However, I would say that the Perlman Doctrine applies generally to third-party witnesses. And it's probably in that context in which the Perlman Doctrine, unless I'm mistaken about – Generally third-party witnesses. And so I guess my – The thing is the lawyer-client privilege is kind of special. If you want to get lawyers, priests, physicians to testify, you have to jump another hurdle. Yes, Your Honor. For good reason. I've never considered whether there ought to be a different rule for lawyers than there is generally for third-party witnesses. But it is an interesting question. I wish I could enlighten you on that, but I can't. Help me on another issue then. When a defense lawyer meets with a client, the client often has a lot of stupid ideas. And one of the functions that the lawyer performs is basically to talk the client out of doing all the stupid things that the client might otherwise do. I would think that anyone, whether it was the lawyer's secretary or a co-defendant or a lawyer for another defendant in a joint meeting, if they decided to get some advantage, they might decide to roll over on the person. And if you use what was said at the meeting planning the defense as the basis for the crime-fraud exception, you've got a huge risk that there can't be any planning of the defense at all. Because as soon as the client proposes to say or do something stupid, it's blown. Well, Your Honor, there's a lot more to this case than that, than just the airing of stupid ideas or even just falsehoods. The defense at one point in the brief says, this is just about, at most, a client giving false information to his lawyer. That's not. Well, remember, the defense doesn't even know what the basis for the crime-fraud exception is because we're not telling them, the district court's not telling them, and you're not telling them. I understand that. And their argument is posed in some sort of alternative. It has to be hypothetical because they can't find out. They'd love to read what you submitted to the court. Yes, Your Honor. They argue, even assuming that there is a falsehood in this case told by Green to his lawyer at this meeting. Let's go with my hypothetical that I asked them about. The lawyers and their clients are meeting, and the chief client, being an idiot in my hypothetical, says, well, let's just get so-and-so to testify to such-and-such, and let's do this and that with whatever other evidence there is, and that way we'll get off. And the lawyer says, no, that would be a crime in and of itself. It seems to me that under your theory, unless, well, I guess if the lawyer was that unequivocal, then the crime-fraud exception would not apply. But if the lawyer was not so unequivocal, then it would. Is that right? If the lawyer said something like, well, you know, we've got a long time between now and then. Don't do anything now. We'll talk about all this. Well, Your Honor, I do think that under those facts, where the person is using a joint defense meeting to scheme out false testimony in a court proceeding, it would be an obstruction of justice. Even if the client, even if the lawyer said no? It would be an attempt at obstruction of justice. So if the client says to the lawyer, let's put so-and-so on, they'll give me a false alibi, and the lawyer says no, you think that that lawyer's consultation with his client is no longer privileged? Because it was an attempt at obstruction. I'm sorry. Let's just take a simple case. It's a mugging. And the lawyer is meeting with his client. And the client says, I'm going to get my girlfriend to alibi me and say I was with her the whole time. And the lawyer says, you can't present false testimony. As I understand your theory, the client has now committed an attempted obstruction of justice. And because the meeting was used for the commission by the client of the crime, attempted obstruction of justice, the meeting is not privileged. I'm not sure, Your Honor, because we have to get down to specific obstruction statutes. In this case, we're talking about an obstruction statute of attempting to persuade, corruptly persuade other witnesses, potential witnesses to a matter. In your scenario, Your Honor, since the conversation is only between the lawyer and the defendant, I off the top of my head cannot think what elements of what obstruction statute would be met by your hypothetical. In our case, however, we're dealing with a different set of facts in which clearly the other person ---- Well, my hypothetical, let's make it a little clearer in that respect. I will talk to my girlfriend, and she will say that. Well, if that amounts, if simply airing the idea illegally amounts to an attempt, which is not a question I've considered, well then, yes, Your Honor. That would be an act of obstruction. It would be attempting to use the attorney-client relationship in furtherance of it. And I would, that hypothetical, however, while it may be an obstruction, lacks a lot of the factual elements of the present situation in which there were communications with other potential witnesses in the judicial proceeding where there is evidence that false testimony, I'm sorry, that false cover story was being spread, that documentation for the judicial proceeding and testimony for the judicial proceeding to back up the false story was being concocted during this meeting. And that I can think of the specific obstruction statute that that falls under in contrast to your hypothetical, where it's a mere conversation with an attorney and not an actual corrupt persuading of another potential witness in the matter. So I think that the facts that are understated So what distinguishes it is there has to be more than talk, there has to be action. Well, there has to be an attempt at a minimum to corruptly persuade another potential witness in the judicial proceeding or otherwise manufacture false documentation, which is another situation that applies in this case. Let me elaborate on the hypo then. Let me change it a little. The girlfriend in the mugging is at the meeting. And the defendant looks at her and says, Isn't it true? The lawyer has asked, Do you have any alibi? And the defendant says, I was with my girlfriend the whole time at her apartment. And then the defendant looks at his girlfriend at the meeting with the lawyer. Isn't that true, dear? And she says, Yes, honey. At that point, he has corruptly influenced that another witness, who maybe she's there because she's a co-defendant or something. He has corruptly influenced her to lie, assuming that the alibi is false. Well, it's no longer privileged in the first place because there's a third party present at the communication. Correct. And, yes, if we were to add your scenario that the girlfriend had a lawyer and it was a joint defense meeting, yes, that would be an attempted obstruction of justice right there. And there are cases that the hearing says the next words out of the lawyer's mouth are, This looks kind of phony to me. You know, you're not allowed to lie, and I can't put on lies. Well, I wouldn't suggest that. It's still an attempted obstruction. I would say so. And they have now lost their privilege, right? I would say so. I would say so. I would say it wouldn't have a lot of jury appeal if it stopped right there. But as a technical matter, legal analysis, yes. So you could now subpoena the lawyer to appear at the grand jury to talk about what took place in the meeting between him and his client and the other lawyer who represented the girlfriend? Yes. And, again, the case we cite, we cite a few cases involving obstruction of justice. We cite one case involving the joint defense privilege and a joint defense meeting. And, again, we studied these cases before we undertook this initial November application so we could do it carefully so that we wouldn't pierce anyone else's privilege, so we wouldn't go after anyone else's communications other than the person who had blown his privilege by attempting to coordinate false testimony inside this joint defense meeting, which he, of course, understood, as did everyone else, was supposed to be availed by a privilege so that no one could get them to talk about what happened. This is a particularly interesting case because it appears to the government that Greene was attempting to use those privileged protections of a joint defense meeting in order to obstruct justice. Which Greene? Gerald Greene. And that's what this is about. Just about Gerald Greene? Well, the government has teed up this motion just about Gerald Greene and piercing his privilege as to what he said. At a later time, it may become appropriate, given the facts that we assemble, to expand that. To include? You may not want to tell me. Well, I don't, Your Honor. I'm concerned about the sealed nature of this case. That's why I'm being somewhat obscure of myself. But so far, so we're only talking about Gerald, in your view? That's what the government teed this up very carefully, to only address his obstruction. There may be a later point at which the court can read the affidavit and see who else might be in the crosshairs at a later time. But at this point, the government has been carefully proceeding with a solid, solid basis against Gerald Greene and being careful not to seek the oral statements of other people at that meeting. And Judge Fisher took great care in crafting the order and actually had the government revise its order and said that the government would be able to pursue this no longer privileged information without harming anyone else's interests in the room. There's such a huge advantage in a multi-defendant criminal case for one of the defendants to roll over on the others. And the advantage grows bigger the more the rollover defendant knows. It seems to me that through deception, dishonesty, and misunderstanding, even honest misunderstanding by the defendant or potential defendant who rolls over, that basically you could eliminate the lawyer-client privilege in pretty much every multi-defendant case. I disagree, Your Honor. Your Honor, I think we have unusual and extraordinary evidence and clear evidence of an obstruction of justice. And in my view, if you're going to go into a joint defense meeting and attempt to sell a false excuse. The evidence in these cases, you and I can't talk about the real facts of this case, but your evidence in such cases would generally be nothing but what somebody who'd previously been a target or a defendant or a secretary or other assistant at the meeting later decided to tell the government in all likelihood for their own advantage. Is that the risk you take if you attempt to obstruct justice in one of these meetings? That means a defense lawyer can't even let a secretary see his files if she has a beef with him or she thinks she's in some kind of trouble herself. And it certainly means that you can't have a joint defense meeting in a multi-defendant case. That's not true, Your Honor. The joint defense meeting does not have to involve obstruction of justice and coordination of false testimony and manufactured documents. Well, that assumes the conclusion. I think that's Judge Kleinfeld's point. The only way you could – is it true that the – are you saying that all you would need to establish crime-fraud in a joint defense meeting is one person rolling over out of that meeting and cutting a deal, and solely on the testimony information of that person, uncorroborated in any other way, would be enough to establish the crime-fraud exception to then get into the whole meeting? I think I understand your question now. I think it would have to depend on the facts of the case and whether that evidence in and of itself, the one person rolling over, met the government's and the judge's view of a reasonable probability, the reasonable probability standard, which is not nothing. It's better than – it's more than reasonable suspicion, less than probable cause. But to answer your question, under whatever facts of your situation, if that is compelling enough evidence of the obstruction in order to meet that burden of proof, then it could be. Now, again, I want to pivot and say that in our case we did an extraordinary job and had quite a bit of luck in addition in being able to corroborate what this source, and I'm just going to say a source, said about the meeting. And so in our case we have further acts after the meeting, indicating that what was said at the meeting was actually being carried out by the – by Gerald Green at a later point. And he took many, many acts that we were able to independently verify apart from our source, and it's quite extraordinary what we stumbled upon. And in this case – Roberts, I'm going to ask you about that, but while we read the in-camera material that was produced in the district court, of course. Your time has expired. If my colleagues have – unless my colleagues have further questions, we'll thank you for your argument. Thank you, Your Honor. Thank you. I think we ran out of time for the appellants, too, didn't we? Unless my colleagues have further questions, we'll conclude. Do you want to give her just one shot? Pardon? Do you want to give her just one quick shot? Okay. One minute. Thank you very much. We cited a number of cases where I believe the actions that were taken make it very distinguishable from ours. Granted, I'm not in a position to argue a specificity what's in the record that's been hidden from us. The alternative we're asking for, of course, our remedy that we're asking for is for alternatively, we're asking for this court to give us access to the information under a protective order so that we could fully and fairly litigate the matter. The Chen case did that. There's no case saying that it must be in-camera. Even the 20-year-old case the district court relied on, that inmate grand jury case, did not say it must be that way. We think the Chen case is instructive. That was a case where there was an indictment. There was thereafter a grand jury subpoena. The parties exchanged affidavits. The matter was litigated in an evidentiary hearing in the district, or not evidentiary, but in an adversarial hearing in the court. It did not impede the grand jury process as far as anything I can see. Here, we believe that given the heightened due process and right to counsel interests that it attached after the complaint was filed, and given the minimal secrecy interests for all the reasons we argued in our papers, that that would be the fair procedure in this case. We're not asking for an expansion of the law in a very narrow ruling that would apply to the unique facts here. Roberts. Thank you, counsel. Thank you. Your Honor, no issues today. May I have one minute as well? I'm inclined not to. We don't do sorry-bubble arguments. Thank you, counsel. Thank you. NRA grand jury proceedings is submitted, and we are adjourned for the day.
judges: Trott, Kleinfeld, Fisher